COMPOSITE METAL LATH CO. v. GLASCO ICE CO.

(Supreme Court, Appellate Division, First Department.   February 11, 1916.)

1. VENDOR AND PURCHASER ⬥64—CONSTRUCTION OF CONTRACT—DESCRIPTION OF PROPERTY.

Under a contract for the purchase of property beginning at a point at high-water mark on the west bank of the Hudson river, and thence running by described courses and distances to high-water mark on the south bank of the Hudson river at the place of beginning, according to a map and survey, with the attached map showing courses and distances corresponding with those described in the agreement, and at the extreme northerly and southerly points the letters "H. W.," indicating the high-water line, not repeating the courses and distances on the high-water line constituting the eastern boundary, but referring thereto as thence "southeasterly along the high-water mark on the south bank * * * to the place of beginning," and showing an exterior line continuing the courses and distances along the river, passing along the exterior lines of the dock located thereupon, the purchaser was buying and the defendant was selling the property within the continuous lines of the survey, including as an unbroken part thereof the dock, upon which the foundations of an icehouse remained.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 92; Dec. Dig. ⬥64.]

2. EVIDENCE ⬥274—DECLARATIONS OF PARTIES.

Where there was an ambiguity in an agreement for the purchase of property, the purchaser might show the declarations and acts of the

---

parties, including the vendor, in pointing out the extent of its occupancy and statement of the lines thereof, to show the real intent of the parties.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1121–1134; Dec. Dig. ☜274.]

3. VENDOR AND PURCHASER ☜334—BREACH OF CONTRACT—PURCHASER'S RE-
    COVERY OF DEPOSIT.

Where the vendor had no title to dock property beyond the original high-water mark in a river, and was unable to give title thereto according to its agreement, the purchaser was entitled to recover back his deposit and the expense incurred through the vendor's breach.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 959–980; Dec. Dig. ☜334.]

Appeal from Trial Term, New York County.

Action by the Composite Metal Lath Company against Glasco Ice Company. From a judgment entered on a verdict for plaintiff, and from an order denying its motion for a new trial, defendant appeals. Affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGH-LIN, DOWLING, and SMITH, JJ.

Frederick W. Murphy, of New York City, for appellant.

Henry B. Corey, of New York City, for respondent.

DOWLING, J. [1] The plaintiff and defendant on January 28, 1914, entered into an agreement for the purchase, at the price of $46,-000, of certain property situate in the town of Saugerties, county of Ulster, state of New York, beginning at high-water mark on the west bank of the Hudson river at the boundary line of lands formerly belonging to Wellington Porter (now Hiram Sutton), and thence running by described courses and distances, finally reaching the high-water mark on the south bank of the Hudson river at the place of beginning, "according to a map and survey made by W. Klingberg, Kingston, N. Y., December, 1899, and January and July, 1900," and further described as being the same premises described in three enumerated deeds. Attached to the agreement was a copy of the Klingberg map. It is because of a certain dotted line passing through what is marked as the "icehouse" upon a pier adjoining the Hudson river on the easterly side of said tract that the controversy has arisen. This map shows courses and distances corresponding with those described in the agreement. At the extreme northerly and southerly points of the tract appear the letters "H. W.," which according to the testimony indicate the high-water line of the Hudson river. While all the other boundaries shown on the map are repeated verbatim in the agreement, the courses and distances shown on the irregular high-water line are not repeated for the eastern boundary of the property, the only reference thereto being the language quoted, namely:

"Thence southwesterly and southeasterly along the high-water mark on the south bank of the Hudson river to the place of beginning."

The exterior line of the tract in question, continuing the courses and distances along the Hudson river, passes along the exterior lines of

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the dock located thereupon. This dock is shown upon the map with· the icehouse indicated by appropriate lines thereupon, as well as an engine room. There could be no question whatever but that the parties agreed and intended to convey the property actually in possession of the defendant, and including the dock and the icehouse indicated thereupon, save for the presence of the dotted line hereinbefore referred to, which, beginning at a point at the northwesterly extremity of the dock proceeds irregularly to the southwesterly corner thereof, where the unbroken line is continued to the extreme southerly boundary of the property. The defendant claims that this dotted line indicates the high-water line of the Hudson river and that the intention of the parties was only to sell to such line. The plaintiff claims that what it agreed to buy, and what the defendant represented it was selling, and what both parties intended to cover by the agreement, was all the property embraced within the solid lines of the survey and including the pier and icehouse.

The plaintiff has proven that when its officers, in company with this defendant, visited the property in question and examined the same before the contract was signed, they were shown the entire property included within the solid lines of the survey, and were invited out on the dock to inspect the same, including the foundations of the icehouse shown on the survey, which still remained, although the upper part of the building had been destroyed by fire. They were told by defendant's president that the icehouse had stood there for 30 years. When this visit was made the ground back of the dock was filled in solidly with rock to the upland, so that there was no water back of the dock, and the only easterly boundary line of the property to be seen was the Hudson river, above and below the dock structure, and the dock itself. It was also proven that the defendant's president said that the plaintiff could expand the dock by applying to the state for a land grant. Defendant's president knew that the property was being bought by the plaintiff for the establishment of a factory, and that not only did they require the presence of clay for their factory (for which borings were made with satisfactory results), but they represented that there was deep water at the dock. Furthermore, when plaintiff's president stated that they desired to build a factory there, they said the filling was solid where the foundations still remained, and that the plaintiff need not be afraid to build there.

[2] In this case, reading together the contract of sale and the map, it would seem clear that what the plaintiff was buying and the defendant was selling was the property within the continuous lines of the survey, including as an unbroken part thereof the dock, upon which the foundations of the icehouse still remained. If there was any ambiguity it was competent for the plaintiff to show the declarations and acts of the parties, including the vendor's pointing out the extent of its occupancy and statement of the lines thereof, in order to show the real intent of the parties. Harris v. Oakley, 130 N. Y. 1, 28 N. E. 530: Dibble v. Cole, 102 App. Div. 229, 92 N. Y. Supp. 938. The mere presence upon the survey of a dotted line, within the field inclosed by solid lines, which were obviously the boundary lines of the property,

including the lines of a dock connected along its entire inner line solidly with the land by rock filling, thus making it an integral part of the tract conveyed, could carry no more meaning to the mind of a purchaser, as intending to limit the clear lines of the tract to be sold, than would the smaller dotted line, at right angles to and approaching the larger line, and perhaps intended to show the original extension, now dried up or filled in, of the creek or stream shown on the map.

[3] As the defendant had no title to the dock property beyond the original high-water mark of the Hudson river, and was unable to give title thereto, plaintiff was entitled to recover back its deposit and the expense incurred through defendant's inability to give a good title. It may well be, upon the proof, that plaintiff was entitled to the direction of a verdict. In any event, the finding of the jury in its favor was correct.

The judgment and order appealed from will therefore be affirmed, with costs. Order filed. All concur.